412-1136. For the appellant, Ms. Mayo. For the appellate, Ms. Ambrose. You may proceed. May I please report? Your Honors, my argument today is brief. This is a simple matter of my client was doing what she could do. She had limited resources, but she was doing what she could do to care for these children. She was making the care plans that she could. And in everything she did, we find that her foremost thought was, where will these children be safe? She left them with her sister. When she knew she couldn't care for them on her own, she called DCFS and asked for help. I think that the court erred in finding that there, by a preponderance or even clear and convincing evidence, that the children were safe. That's the meat of our argument. That is our argument today. If the court has any questions, I'd be happy to field those at this time. Thank you. Ms. Ambrose? May it please the court and counsel? The respondent said she was at odds with her brother-in-law, but that did not forgive or explain why she would leave her two-year-old toddler and several-month-old child on a doorstep without telling her sister about it. And it was just luck that her sister happened to look out the door and see the kids there, that they had not wandered away. It was 11 o'clock at night, and she took them in. There was no previous arrangement for her to take care of the children, although she had done so about a month and a half earlier than this incident on August 30th. And even after she agreed to allow her sister to tend to the children, when DCFS got to the picture, she, for some reason, picked them up, and she was homeless at the time and had no money. And it was the DCFS caseworker who telephoned her and wanted to know what the arrangement was for the children. And at that time, she agreed to meet him on the corner of a street here in Springfield and told him she was homeless and that somebody had stolen the money she got from the state in order to take care of the children. So, again, she agreed to allow her sister to tend to the children. Then, inexplicably, she picks them up again, which is against the care plan that was in place, and she's homeless. And then she calls DCFS and says, I have no way of taking care of these children. So her sister was annoyed by that time, and they had to stick them in out of the nursery and has no plan in store. And they take the children, or the infant, to St. John's Hospital, where she is receiving treatment for congestion. And initially, the mother had agreed to participate in some sort of mental health treatment because she was concerned about seeing a therapist, which probably explains why she acts partially so erratically. And also participate in other, like, in addition to the mental health services, to participate in parenting classes. And then an hour or so later, she changes her mind and gets angry with the DCFS caseworker and says, no, I'm not going to do anything. I'm going to take the kids out of state. And when he pressed her for details, she said that she didn't have any particular plan in mind. She didn't even know what state she was going to move to, and this is without resources. So, if anything, the court also found that the state had proved its case of neglect by clear and convincing evidence. And that was a higher standard than what the state needed to prove, which was a preponderance. So, I think this case is pretty clear-cut that these kids were neglected and that she did not make the appropriate care plan for them. Are there any questions? Just one factual clarification. The state that she had suggested she was going to actually was Ohio, wasn't it? Yes. Okay. Anything else? Was there an earlier separate appeal and then these were consolidated or they were filed regarding each minor separately and then got consolidated? Yes, please. Your Honor, the adjudication happened on the same day for both children. The remissive appeal was filed and we filed a motion with this court to consolidate. Oh, to consolidate. Okay. Is there any rebuttal? Your Honor, only that my client did, in fact, give the investigator a phone number of the individual she intended to go to. She did have a plan to go to Ohio and to take the bus fare. The kids could ride free. She would get to Ohio. She would live with her sister. Ms. Mayer, are you appointed in this case? Yes, Your Honor, I am. I don't suggest this as a criticism. I suggest this for the future. Yes, sir. What have you presented today that required an oral argument? I understand, sir, and I wasn't sure if I could, honestly, I wasn't sure if I could tell the court that I didn't want oral argument. I didn't know if that prejudiced my client's position. I used to always advise law students never waive oral arguments. That was my... But that's more of an exhortation or an exaggeration for emphasis. Yes, sir. In this case, I think your experience and your understanding of the case should have been sufficient for you to see that the briefs would speak for you, though I do understand your hesitation. If you have any concern about that, I'm sure Ms. Ambrose would tell you that this court would not treat the matter any differently, whether you've asked for oral argument or not. Yes, sir. But we thank you for appearing today, and thank you for your advocacy for your client in the brief. Thank you. We'll take this matter under revising.